IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 2:17cr43 |
| v. ) | |
| ) | |
| WILLIAM R. HUTSENPILLER, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S SUPPLEMENT TO POSITION
IN REGARD TO SENTENCING

Now comes the United States, by its undersigned counsel, and supplements its position in regard to sentencing. The sentencing hearing in this case commenced on September 21, 2017. During the course of the hearing, the defendant withdrew his objection to the three-level enhancement in the presentence report's guideline calculations that was applied by the probation officer under U.S.S.G. 3B1.1(b) for the defendant's role in the offense as a manager or supervisor of criminal activity. The Government's objection that the defendant should instead receive a four-level enhancement under § 3B1.1(a) as an organizer or leader of criminal activity remains outstanding. That section states that "[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." At the hearing, the defendant conceded that the criminal activity involved five or more participants and was extensive. Accordingly, the only remaining issue in determining if § 3B1.1(a) applies is whether the defendant was an organizer or leader, as opposed to being only a manager or supervisor.

In support of its position that the defendant was an organizer or leader, the Government presented unrebutted testimony at the hearing from Special Agent Dan Lanter of the Defense

Criminal Investigative Service, and it relies on that evidence in addition to the facts contained in the agreed Statement of Facts. The Court directed the parties to file supplemental position papers with proposed findings of fact in advance of the continuation of the sentencing hearing that is set for October 13, 2017. The findings of fact proposed by the Government are as follows:

## Proposed Findings of Fact

The Government proposes that the Court make the following findings of fact, based on the agreed Statement of Facts (SOF) and the unrebutted testimony of Special Agent Lanter:

1. Between approximately October 2009 and November 2013, William R. Hutsenpiller was the GS-15 Financial Department Head/Comptroller for Norfolk Ship Support Activity who oversaw its $200 million operating budget. SOF ¶ 5.

2. During this time period, Hutsenpiller was a member of a conspiracy to force government prime contractors, including Transtecs, to use Global Services (Global) as a subcontractor, and for Global to hold unexpended Government funds that should have been returned to the Government. Transcript of Testimony of Dan Lanter (Tr.) at 5-7. Specifically, Transtecs was awarded a prime contract to perform work for Norfolk Ship Support Activity, and Hutsenpiller and co-conspirators Philip A. Mearing (owner of Global) and Kenneth Deines (Global controller) discussed methods to force Transtecs to use Global as a subcontractor. SOF ¶ 7; Tr. at 7.

3. Hutsenpiller was a "primary participant" in forcing Transtecs to use Global as a subcontractor. Tr. at 9. In fact, from "the very beginning" Hutsenpiller played "an instrumental role" to assure that Global became Transtec's subcontractor. Tr. at 10.

4. At a meeting that took place on March 18, 2010, when the owner of Transtecs indicated that he did not intend to use a subcontractor on this contract, Hutsenpiller responded with words to the effect of "let's hold on to that answer." Tr. at 7-8. Hutsenpiller and co-conspirator Joe Olszewski had previously discussed ways to force Transtecs to accept Global as a subcontractor, one of which was to threaten Transtecs with cancellation of its contract. Tr. at 7.

5. This threat was relayed to Transtecs at a meeting with its owner and project manager in a meeting that took place in Hutsenpiller's office. Tr. at 7. Transtecs eventually relented and agreed to take on Global as a subcontractor. Tr. at 7-8.

6. The purpose of forcing Transtecs to use Global as its main subcontractor was to permit Hutsenpiller to have access to Global, which was willing to retain unexpended Government funds that should have returned to the Government, and in fact retained $5.1 million of such funds. SOF ¶ ¶ 7-9.

7. Hutsenpiller improperly directed Transtecs to pass millions of dollars of work to Global, which resulted in Global retaining unexpended Government funds. SOF ¶ ¶ 8,9.

8. Global submitted false claims that resulted in Government monies being deposited into what the co-conspirators referred to as the "reserves" at Global that could be utilized by Hutsenpiller for various schemes. Tr. at 8.

9. Hutsenpiller also directed that hidden, fictitious percentage fees be added to Government contracts, which Global moved to its "reserves" to be used at Hutsenpiller's direction. Tr. at 15-16.

10. At Hutsenpiller's direction, instead of returning unexpended monies to the

3

Government at the conclusion of contracts, Global used such funds for improper purposes, including the purchase of various items for Hutsenpiller's personal use.   SOF ¶ 9.

11.   Hutsenpiller informed Mearing that he would require an annual salary of $150,000 if he decided to work at Global after his retirement from Government service, and that it would be paid from $2.4 million of the unexpended funds that he had previously directed to Global.   SOF ¶¶ 9, 11.

12.   Hutsenpiller made several requests that Global provide him with various personal items, which Global purchased with Government funds.   SOF ¶ 10.   Hutsenpiller chose which items he wanted to receive, including an iPad, a new phone and Bose headphones, among others.   Tr. at 11-12.   Hutsenpiller was well aware that Government funds were being used to purchase these illegal gratuities that he actively solicited.   Tr. at 12-13.

13.   Separate from its role as a subcontractor for Transtecs, Global made its own fraudulent bid to the Government for new work in the amount of $2.97 million, which co-conspirator Denies, the Global controller, stated was as close as possible that he could get to the $3 million dollar figure "requested by Hutsenpiller."   Tr. at 18-20.   This scheme, as Hutsenpiller knew, involved bidding on work that had already been completed and the preparation of false documents.   Tr. at 18-20.

## Conclusion

The undisputed facts outlined above show that Hutsenpiller was more than a mere manager or supervisor.   He was an organizer and leader of the criminal activity described in the criminal information and statement of facts.   In fact, he was a high ranking member of a conspiracy that originated various schemes, including forcing Transtecs to use Global as a

subcontractor, directing Global to retain unexpended Government funds, and soliciting illegal gratuities for himself. He was the highest-level Government employee to participate in the conspiracy and directed others in the execution of the various illicit schemes. Accordingly, he is well-deserving of a four-level enhancement for being an organizer or leader of criminal activity under U.S.S.G. § 3B1.1(a).

                                      Dana J. Boente
                                      United States Attorney

                            By:         /s/
                                  Alan M. Salsbury
                                  Stephen W. Haynie
                                  Assistant United States Attorneys
                                  United States Attorney's Office
                                  101 West Main Street, Suite 8000
                                  Norfolk, Virginia 23510
                                  Tel. - 757-441-6331
                                  Fax - 757-441-6689
                                  Email – alan.salsbury@usdoj.gov
                                  Email – steve.haynie@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

/s/
Alan M. Salsbury
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone Number - 757-441- 6331
Facsimile Number - 757-441-6689
E-mail Address - alan.salsbury@usdoj.gov